CANUTILLO INDEPENDENT SCHOOL
DISTRICT, et al.

v.

NATIONAL UNION FIRE
INSURANCE CO.

No. EP–92–CA–41–DB.

United States District Court,
W.D. Texas,
El Paso Division.

Oct. 17, 1995.

E. Link Beck, El Paso, TX, for plaintiffs.

Patrick A. Groves, El Paso, TX, for defendant.

## MEMORANDUM OPINION
### AND ORDER

BRIONES, District Judge.

On this day, the Court revisits the above-captioned cause, hopefully for the last time. Pursuant to the Court's Memorandum Opinion of August 22, 1995, Canutillo filed its brief on the duty to indemnify on September 5, 1995. National Union filed its response on September 12, 1995. Canutillo's reply was received September 15, 1995. Having previously determined that National Union had a duty to defend prior to the filing of the *Mendoza* Plaintiffs' Second Amended Complaint, the Court will now tackle the coverage issue based on that Second Amended Complaint. After due consideration the Court is of the opinion that the cause should be disposed of as set forth below.

### Statement of Facts

The facts of the case are set out in the August Memorandum Opinion and will not be reiterated here. For purposes of this opinion it is sufficient to note that the Second Amended Complaint of the Plaintiffs in the *Mendoza* litigation alleged only a violation of Title IX. Further, the parties in their "Agreement" stipulate that the Second Amended Complaint and the policy itself are the controlling documents before the Court.[1]

1. The "Agreement" contained in the settlement states:

If the Court or any Court considering the issue, by final judgment, determines that the causes of action for money damages asserted against CISD in the damage lawsuit (*Mendoza*) are within the coverage provided by the policy then NATIONAL UNION shall execute and delivery to CISD a release of the JUDGMENT, in a form acceptable to counsel for both NATIONAL UNION and CISD.... This provision shall not be construed to preclude CISD from asserting a claim for recovery of any sums paid by it in satisfaction of the judgment or any recovery under its counter-

claim in the Declaratory Judgment Action (the case-at-bar) under other theories. If by final judgment the Court or any other court considering the issue determines that the policy does not insure the causes of action for damages asserted against CISD in the Damage Lawsuit, then NATIONAL UNION shall be entitled to all rights as a judgment creditor and shall be entitled to enforce and/or collect the JUDGMENT; provided that if by final judgment of the Court, CISD recovers a judgment under its counterclaim against NATIONAL UNION then NATIONAL UNION shall have the right to collect from CISD only the amount by which $1,000,000 exceeds any recovery by CISD under its counterclaim.

## Summary Judgment

■ Summary Judgment is warranted where the pleadings and evidence on file show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Industr. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In the case at bar, both parties and the Court agree that the determination of the duty to indemnify is proper for summary judgment. The Court reviews all the terms of the policy and all the terms of the "Agreement".

## Duty to Indemnify

■ The Court now considers the narrow question of whether National Union has a duty to indemnify Canutillo. In this diversity case, the duty to indemnify is to be determined under Texas law. In contrast to the duty to defend, the duty to indemnify is not based upon the third party's allegations, but upon the actual facts that underlie and result in the liability. *American Alliance Ins. Co. v. Frito–Lay, Inc.,* 788 S.W.2d 152, 153–54 (Tex.App.—Dallas 1990, writ dism'd); *Cluett v. Medical Protective Co.,* 829 S.W.2d 822, 828 (Tex.App.—Dallas 1992, writ denied). The *Mendoza* litigation was settled out of court. The liability in this case was not litigated, thus, the actual facts were not ascertained. However the parties have, by agreement stipulated that the facts as alleged in the Second Amended Complaint are those on which the Court should base its determination on this issue.

National Union denies the existence of coverage based on the first three exclusions in the policy. The exclusions state as follows:

This policy does not apply:

The "Agreement" continues:
For purposes of this [sic] Declaratory Judgment Action or any other suit to enforce this agreement, the facts set forth in the plaintiffs' Second Amended Complaint and as developed in the discovery conducted in the damage lawsuit shall be deemed to be true for the limited purpose of

a) to any claim involving allegations of fraud, dishonesty or criminal acts or omissions; however, the insured shall be reimbursed for all amounts which would have been collectible under this policy if such allegations are not subsequently proven;

b) to any claims arising out of (1) false arrest, detention or imprisonment; (2) libel, slander or defamation of character; (3) assault or battery; (4) wrongful entry or eviction or invasion of any right of privacy;

c) to any claim arising out of bodily injury to, or sickness, disease or death of any person, or damage to or destruction of any property, including the loss of use thereof;

The *Mendoza* Plaintiffs' Second Amended Complaint, which was the live pleading at the time of the settlement agreement alleged only a Title IX cause of action. As in the prior opinion, if the Court finds that the cause of action advanced by the *Mendoza* Plaintiffs was not excluded, or that there was some question as to whether coverage existed through ambiguity in the policy, then National Union had a duty to indemnify.

### I.

■ The Court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *National Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991). Any intent to exclude coverage must be expressed in clear and unambiguous language. The insurer has the duty to expressly and clearly state the exclusion. *Id.* Exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured. *Id.* Thus, the inquiry

determining the coverage issue.... This paragraph shall not be construed to deny CISD or National Union the right to seek discovery or to offer evidence on other matters in support of, or in defense of, their respective contentions in the Declaratory Judgment Action or any subsequent litigation between them.

is whether the construction advanced by Canutillo is a reasonable interpretation.

The policy does not specifically exclude Title IX claims against the school district. The Second Amended Complaint does not state a cause of action for fraud, dishonesty, criminal acts or omissions, false arrest, detention or imprisonment, libel, slander or defamation of character, assault or battery, wrongful entry or eviction or invasion of any right of privacy, bodily injury to, or sickness, disease or death of any person. National Union is correct in that these terms are unambiguous. The Complaint does state a cause of action based on gender discrimination. Thus, National Union's only hope is that the terms "involving" and "arising out of" in the exclusions are of sufficient breadth and particularity that the conduct of Tony Perales can be included within the exclusions. National Union zealously so argues.[2]

### A.

The Supreme Court has held that when a teacher sexually harasses or abuses a student because of that student's sex, that teacher intentionally discriminates on the basis of sex. *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 73, 112 S.Ct. 1028, 1037, 117 L.Ed.2d 208 (1992). When there is an allegation of sexual misconduct, Title IX, as applied to school districts by this Court, requires that there be two distinct actions or inactions, at least one of which is intentional in nature, on the part of an employee and on the part of the school district. *See Rosa H. v. San Elizario Independent School Dist.,* 887 F.Supp. 140 (W.D.Tex.1995). But, it is the conduct of the school district which gives rise to the cause of action and is at the heart of any Title IX action.

Title IX forbids schools receiving federal funds from discriminating against a student on the basis of gender. A cause of action under Title IX is a suit alleging discrimination. Only the conduct of the school board itself can give rise to Title IX liability.[3] A suit under Title IX alleges that the school district has failed to implement policies or procedures to prevent or discover incidents of sexual discrimination or, as in *Rosa H.,* that once the discrimination has been discovered failed to act in an appropriate manner.[4] In other words, the suit alleges that Canutillo made an error or omission by failing to comply with Title IX. Tony Perales did not violate Title IX. While his conduct was certainly discriminatory, without some action by Canutillo the cause of action under Title IX cannot be sustained.

Admittedly, as this Court and others have noted, there is a genuine dearth of instructive Title IX case law. However, in this Court, Title IX does require proof of negligent, reckless or intentional acts by the school district, independent of the intentional conduct of the employee. This Court believes that to hold otherwise is to place the school district in the untenable position of being liable for conduct which it was, or is unable to remedy or rectify. Simply put, case law does not allow the school district (the insured) to be held liable for the wrongful act of an employee under either Title IX or § 1983.[5] There must be further wrongful conduct by a school district to prove a Title IX case. A Title IX cause of action is **not** the same as a § 1983 cause of action; such a reading renders Title IX redundant.

This Court interprets Title IX so as to require proof, by a preponderance of the evidence, that the school district was negligent or acted with recklessness or intentionally discriminated. This requirement is a

---

2. National Union seems to take the position that there is something improper with the Court analyzing the terms of the exclusions although that is, of course, part of the standard which the Court is bound to follow.

3. The Court is aware of an unpublished Western District opinion which would impose strict liability on a school district when there is sexual abuse of a minor. *Leija v. Canutillo I.S.D.,* 887 F.Supp. 947 (W.D.Tex.1995) (Furgeson, J.). This

case has not yet been reviewed by the Fifth Circuit. *Rosa H., supra,* was decided the next day and yet was not cited by Defendant.

4. There are, of course, other causes of action for gender discrimination under Title IX. The Court is limiting its discussion to those relevant to the case-at-bar.

5. See the discussion on coverage below.

separate and discrete element of a Title IX claim. While Perales' conduct is discriminatory, it is only the conduct of the school district which gives rise to legally cognizable discrimination. The Title IX claim does not "arise out of" the conduct of Tony Perales, it arises out of the inactions of Canutillo, thus the exclusion does not apply. On this basis the Court finds a duty to indemnify.

## B.

 Tony Perales is an **employee** of the school district: he is not an insured. Canutillo argues that the exclusion should apply to the insured, that is, the school leaders or in this case the school board.[6] National Union does not contend that any school board member did anything which would run afoul of the exclusions. Had a principal or assistant principal (or any named insured) committed the sexual abuse then the exclusion would arguably apply.

Defendant argues that to interpret the assault and battery exclusion to apply only to claims against the insured who actually commits the assault and battery would "emasculate" the exclusion. The Court strongly disagrees with this statement. To so interpret the exclusions would be to give the words their plain meaning; if one of the listed insured engaged in conduct subject to the exclusion, the policy does not apply, otherwise it does. This interpretation is simple, clear and direct. It does not strip the words of their meaning; rather, it gives them precise meaning.

National Union cites an unpublished opinion which is of no precedential value, which reaches the opposite conclusion regarding this interpretation, without explanation. *The Board of Public Education of the School District of Pittsburgh v. National Union Fire Ins. Co.* (Ct of Common Pleas, Alleghe-ny Cty., Pa., June 29, 1995). In that case the Court noted that:

"To interpret the assault and battery exclusion here to apply only to claims against the insured who actually commits the assault and battery would emasculate the assault and battery exclusion leaving it subject to the whim and ingenuity of the Plaintiff in finding negligence or other wrongs which might raise liability against the Defendant and more importantly a coverage claim against the insurer. The paries to the policy did not agree to this."

What the parties did or did not agree to is memorialized in the policy. Nothing in any of the exclusions says anything about the exclusion applying to the conduct of a non-insured. Further, the requirements of Title IX are not "whim and ingenuity" but an element of the cause of action. Without evidence of negligence, or recklessness or intentional misconduct by the school district, plaintiffs in *Mendoza* or any other Title IX case, as applied by this Court, lose. It is the insured whose conduct violates the law under Title IX. It is the insured whose conduct or lack thereof is a necessary element of the cause of action. It is clear to the Court that if a listed insured had committed the acts then the exclusion would apply. It is equally clear that if National Union had intended for the exclusions to apply to the conduct of third parties then National Union would have, and could have, included language similar to that contained in the Policy Agreement 1: ". . . or of any other person for whose actions the insured is legally responsible. . . ." The exclusions include no such language. This Court finds that the plain meaning of the words in the exclusions apply to only the insured.[7] Such a construction is certainly reasonable, which is all that is required by Texas law. Additionally, failure to so hold would be a failure to strictly construe the exception against the insurer as required

---

6. Insured as that term is defined in the policy includes:
 "[T]he School District ... the Board of Education of the School District and all Trustees, Directors and members of the Board of Education of the School District. Insured shall also mean any employee of the School District who holds a position of Superintendent or Assistant Superintendent, Administrator or Assistant Ad-ministrator, Principal or Assistant Principal or any equivalent administrative position."

7. A construction by which the exclusion applies only to the conduct of a non-insured is a logical extension of National Union's argument, although under the facts of this case, this conclusion is purely dicta.

by Texas law. On this basis, the Court finds a duty to indemnify.

## C.

National Union cites a variety of Federal cases for the proposition that the insured's negligence cannot be used as a basis for coverage of a sexual abuse. *Commercial Union Ins. Co. v. Roberts*, 7 F.3d 86 (5th Cir.1993); *Allstate Ins. Co. v. Mauldin*, 869 F.Supp. 478, 480 (W.D.Tex.1994). Neither of these cases were brought as discrimination claims under Title IX. *Roberts* and *Mauldin* involved abuse **by the insured** which is clearly not the situation here. These cases only reinforce the Court's opinion that a reasonable construction of the language of the exclusions in the case at bar is that they apply only to the insured. If nothing else, it precludes the argument that such an interpretation is meaningless and superfluous as it is the one relied on by the insurance company in those cases.

In *Old Republic Ins. Co. v. Comprehensive Health Care Associates, Inc.*, 786 F.Supp. 629 (N.D.Tex.1992), *aff'd* 2 F.3d 105 (5th Cir.1993), the District Court held that the claims of negligence were not severable from the alleged acts of harassment. There the Court eventually found that the reason there was no coverage was that the specific language of the policy excluded the acts based on the commonly-used definition of "occurrence". That is not the situation in the Title IX case which is the basis of this suit.

National Union further cites the Court to a number of Texas and Federal cases which hold that assault and battery exclusions preclude coverage for negligent failure to prevent the attack. *Audubon Indemnity Co. v. Patel*, 811 F.Supp. 264 (S.D.Tex.1993); *Tarrant County Ice Sports, Inc. v. Equitable Gen. Life Ins. Co.*, 662 S.W.2d 129 (Tex. App.—Ft. Worth 1983, writ ref'd n.r.e.); *Garrison v. Fielding Reinsurance, Inc.*, 765 S.W.2d 536 (Tex.App.—Dallas 1989, writ denied). None of these cases alleged discrimination under Title IX. The *Audubon* Court did not discuss the language of the policy exclusions and based its terse opinion on a Motion for Summary Judgment to which the defendant failed to respond. In *Tarrant County* the provisions of the policy contained the specific language "assault and battery not committed by the assured" and a specific endorsement which overrode any language to the contrary contained within the policy excluding coverage for assault and battery; clearly this is not the case in the policy before the Court. *Garrison* contained a specific endorsement similar to that in *Tarrant County* which is not present in the case at bar.

## II.

The Court has also given considerable thought to Plaintiff's contention that National Union's interpretation of the policy exclusions would mean that the policy did not cover a single category of potential damages under Texas law. The Court was also unable to identify a set of facts giving rise to a cause of action which would be covered. As this contention has been raised before, the Court is certain that if such a category existed National Union would have brought it to the Court's attention. When directly asked by the Court, National Union's representative was unable to give a specific answer.

 School districts and their administrators enjoy immunity from a wide variety of suits in Texas. Section 21.912 of the Texas Education Code provides:

"No professional employee of any school district within the state shall be personally liable for any act incident to or within the scope of his duties of his position of employment, and which acts involves the exercise of judgment or discretion on the part of the employee, except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in bodily injury to students."

Further, trustees and agents of a school district acting in their official capacity and in good faith enjoy governmental immunity. *Campbell v. Jones*, 153 Tex. 101, 264 S.W.2d 425 (1954). Regarding tort claims, a school district is immune from liability unless that immunity has been specifically waived by the Texas Tort Claims Act. The long and the short of this Act is that unless the injury is

caused by the operation of a motor vehicle under the control of a school district employee, the district is immune. *See LeLeaux v. Hamshire–Fannett School Dist.*, 835 S.W.2d 49 (Tex.1992).

In *Thomas v. Oldham*, 895 S.W.2d 352 (Tex.1995), the Texas Supreme Court determined that a judgment in an action against a governmental unit under the Tort Claims Act bars the simultaneous rendition of a judgment against the employee who gave rise to the claim. *Thomas*, 895 S.W.2d at 357. Immunity also applies to Federal § 1983 claims where the policy-making official (such as a board member) acted in accordance with established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Further, for almost twenty years, municipalities (school districts) cannot be held liable for the actions of their employees through the doctrine of *respondeat superior* in a § 1983 cause of action. *Monell v. Dept of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This is by no means an exhaustive list, but it does give some indication of the broad and necessary limits placed on the potential liability of a school district in Texas. The policy at issue as interpreted by National Union would cover nothing listed above.

 A contract is ambiguous "when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning...." *Towers of Tex., Inc. v. Sys., Inc.*, 834 S.W.2d 1, 2 (Tex.1992). Ambiguity is a question of law in this circuit. *Thrift v. Hubbard*, 44 F.3d 348, 357 (5th Cir.1995) *citing Watkins v. Petro–Search, Inc.*, 689 F.2d 537, 538 (5th Cir.1982). In determining whether a contract is ambiguous, the Court must view the wording of the contract in light of the surrounding circumstances. *Thrift*, 44 F.3d at 357. The Court agrees with Plaintiff that if under Texas law there is no cause of action against the school district covered by the policy, given the interpretation advanced by National Union, then there is certainly an ambiguity regarding just what, if anything, is covered by the policy. Because of the well-established rule in Texas

of construing the policy against the insurer, if there is an ambiguity, then there is a duty to indemnify. *Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344, 349 (Tex. 1976). The Court finds that the policy is ambiguous (at the very least) as to what, if anything, is actually covered, and therefore there is a duty to indemnify.

### Conclusion

The Court finds that for the foregoing reasons, each on its own merits, the School Leaders Errors and Omissions Policy Number SCL 431 3759, purchased by Canutillo from National Union covered the claims made against Canutillo in Second Amended Complaint in the case of *Mendoza, et al. v. Canutillo I.S.D., et al.*, EP–91–CA–344–H in the U.S. District Court for the Western District of Texas. National Union has a duty to indemnify.

Accordingly, it is ORDERED that on the issue of duty to indemnify, Plaintiff's Motion for Summary Judgment is hereby GRANTED. Defendant's Motion for Summary Judgment is hereby DENIED.