Holly FRANKS, as next friend of
H.B.L., a minor, Plaintiff,

v.

The KENTUCKY SCHOOL FOR THE
DEAF, et al., Defendants.

Civil Action No. 96–220.

United States District Court,
E.D. Kentucky.

Dec. 27, 1996.

Thomas N. Kerrick, Lanna Martin Kilgore, Kerrick, Grise & Stivers, Bowling Green, KY, for plaintiff.

William B. Pettus, Attorney General's Office, Frankfort, KY, for defendants.

## OPINION AND ORDER

FORESTER, District Judge.

This matter is before the Court on the following motions filed by defendants, the Kentucky School for the Deaf, the State Board for Elementary and Secondary Education, Paul Smiley, David Anderson, and

Donna Anderson: (1) for judgment on the pleadings or in the alternative, for summary judgment [docket entry 14]; (2) to strike plaintiff's affidavit [docket entry 21]; and (3) for judgment on the pleadings [docket entry 26]. Also before the Court are the following motions filed by plaintiff, Holly Franks: (1) for leave to amend the complaint [docket entry 17]; and (2) to seal the record and for leave to supplement plaintiff's response with tendered affidavit of H.B.L. [docket entry 22]. All parties have responded and replied to the motions listed above, except with respect to defendants' second motion for judgment on the pleadings. Thus, these matters are ripe for review.

Due to the number of issues raised by these motions, each issue is analyzed separately.

## I. FACTS AND PROCEDURAL HISTORY

This is a Title IX case with a pendent state claim of negligence and a claim for punitive damages. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and § 1367, pendent or supplemental jurisdiction.[1]

On May 1, 1996, Holly Franks ("Franks"), mother of H.B.L. ("H.B.L."), filed a complaint as next friend of the minor child, against Kentucky School for the Deaf ("School"), the State Board for Elementary and Secondary Education of Kentucky ("Board"), and the following individuals in their official and individual capacities: Paul Smiley ("Smiley"), David Anderson ("Mr. Anderson"), Donna Anderson ("Ms. Anderson"), and Mike Brame ("Brame"). Franks alleges that while her daughter was in the care of the defendants at a track meet at Centre College on or about May 2, 1995, she was sexually assaulted, sexually abused, sexually harassed, raped at knife point, and physically beaten by Kevin Hoheimer ("Hoheimer"), a male student of the School.

Franks alleges that this incident "altered the conditions of her [daughter's] education and created a threatening, unsafe and abu-sive educational environment from which Franks transferred her daughter to another school." *Verified Complaint* at ¶ 18. The other school's tuition is allegedly higher and is located further away from Franks' home, therefore increasing transportation expenses and decreasing the feasibility of visits. Franks states that her daughter suffered mental and physical injuries, pain and suffering, mental anguish, emotional distress and loss of enjoyment of life.

In her first cause of action, Franks alleges that Hoheimer sexually assaulted and abused H.B.L. twice before the incident at bar, and that defendants knew or should have known of the dangers of sexual abuse and rape of H.B.L. that was posed by the continued enrollment at the School of Hoheimer. Franks asserts that defendants failed to take prompt remedial action to prevent such sexual assault and rape, and thus failed to protect and supervise H.B.L. Further, Franks charges that the School "knowingly failed to take action to remedy a hostile environment caused by Hoheimer's sexual harassment of H.B.L. thereby denying H.B.L. the benefits of, or subjected her to discrimination under the educational program of, the School, in violation of Title IX," 20 U.S.C. § 1681–1688. *Verified Complaint* at ¶ 23.

In her second cause of action, Franks asserts the allegations cited above and contends that defendants breached their duty to supervise and to protect H.B.L. and that this negligence was the proximate cause of H.B.L.'s injuries. Plaintiff asks for one million dollars in compensatory damages.

In her third cause of action, Franks incorporates all allegations cited above and asserts that defendants acted toward H.B.L. with "oppression, fraud or malice," and therefore Franks demands one million dollars in punitive damages under KRS § 411.184, *et seq. Verified Complaint* at ¶ 34.

On June 3, 1996, Franks voluntarily dismissed all claims against defendant Brame,

---

1. Both plaintiff and defendants claim that this Court has jurisdiction under 28 U.S.C. § 1332, diversity jurisdiction. This must be a typograph-ical error, as both sides admit that plaintiff and defendants are citizens of Kentucky.

as he was not yet employed at the School at the time of the incident [docket entry 12].

Defendants filed a motion for judgment on the pleadings or in the alternative, for summary judgment, on June 3, 1996 [docket entry 14]. Franks responded on July 3, 1996 [docket entry 18] and filed a motion for leave to amend the complaint [docket entry 17]. Defendants replied to Franks' response, responded to Franks' motion, and filed a motion to strike Franks' affidavit on July 12, 1996 [docket entries 19, 20, and 21]. On July 22, 1996, Franks filed a motion to seal the record and for leave to supplement her response to defendants' motion for summary judgment with the affidavit of H.B.L. [docket entry 22]. Defendants oppose Franks' motion in their response filed July 26, 1996 [docket entry 23], to which Franks replied on August 6, 1996 [docket entry 25]. On December 17, 1996, defendants filed a second motion for judgment on the pleadings, which is in actuality, a supplement to defendants' first motion [docket entry 26]. Plaintiff has not yet responded, however, the time for responding has not lapsed. The Court feels confident that plaintiff's response will not alter its decision on this motion, and therefore will rule on this motion without considering plaintiff's response.

## II. DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

In support of their two motions, defendants assert the following as grounds for judgment on the pleadings/summary judgment:

1) Franks lacks standing and is not the proper party plaintiff;

2) Franks failed to state a claim against defendants on which relief can be granted;

3) defendants are entitled to immunity under the 11th Amendment of the U.S. Constitution, and the Kentucky Constitution § 231 with respect to state law claims;

4) defendants are entitled to immunity under the 11th Amendment of the U.S. Constitution with respect to the Title IX claim; and

5) this Court should decline to exercise supplemental jurisdiction over the state claims.

## A. RIPENESS OF DEFENDANTS' RULE 12(c) MOTION

Contrary to plaintiff's assertion that Fed. R.Civ.Proc. 12(c) does not apply to defendants' motion for judgment on the pleadings, or alternatively, to defendants' motion for summary judgment, the *pleadings* are closed and thus defendants' Rule 12(c) motion is ripe for review. However, because both sides have submitted affidavits, documents, and/or correspondence with their respective motions, responses, and replies, the Court will consider such evidence in making its findings, and thus will review defendants' motion as a motion for summary judgment.

## B. STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party

must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Companies,* 8 F.3d 335, 340 (6th Cir.1993). Conclusory allegations are not enough to allow a non-moving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2510 (citations omitted).

## C. SUBSTANTIVE ISSUES

### 1. Standing

■ Title IX provides,

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . .

20 U.S.C. § 1681. Defendants assert that Franks is prohibited from pursuing a claim under Title IX because on its face, the statute only applies to students and participants in educational programs. *See . Bosley v. Kearney R–1 School District,* 904 F.Supp. 1006, 1020 (W.D.Mo.1995) (holding that a parent has no cause of action under Title IX); *R.L.R. v. Prague Public School District,* 838 F.Supp. 1526, 1529 (W.D.Okla.1993) (holding that the student holds the sole cause of action under Title IX). Defendants contend that as the mother and not the student, Franks is prohibited from proceeding under Title IX. Defendants cite a Sixth Circuit Court of Appeals' case which does not address the issue of the standing of a student's parent, but in which the Court of Appeals held that non-students have no claim under Title IX. *Romeo Community Schools v. U.S. Dept. of Health, Educ., and Welfare,* 600 F.2d 581 (6th Cir.1979), *cert. denied,* 444 U.S. 972, 100 S.Ct. 467, 62 L.Ed.2d 388 (1979).

Franks argues that she does have standing to sue as her daughter's next friend pursuant to *Davis v. Monroe County Board of Education,* 74 F.3d 1186, 1186 (11th Cir.1996). *See also* KRS 387.300, *Qualifications of Persons Suing as Next Friend.* In *Davis,* the student's mother, as the student's next friend, brought a Title IX claim for the sexual abuse of her daughter by another student at the defendant school. The U.S. District Court dismissed the suit on the ground that no claim had been stated. There is no discussion in the Court of Appeals' opinion and order which reversed and remanded the case, of whether or not the mother had standing. Additionally there is no indication in the published opinion that the issue of standing was ever raised by defendants or ruled upon by either the district court or the appellate court.

Franks argues that if this Court were to rule that she did not have standing to pursue this action, then she should: (1) freely be given leave to amend her complaint pursuant to Fed.R.Civ.Proc. 15, or (2) be given leave to become H.B.L.'s guardian and then amend the complaint to reflect the mother's title.

This Court relies on a federal court of appeals case which is directly on point but not cited with respect to this issue, by either defendants or plaintiff. The Fifth Circuit Court of Appeals in *Rowinsky v. Bryan Independent School District,* 80 F.3d 1006 (5th Cir.1996), held that while a parent does not have standing to assert a personal claim under Title IX, "[i]t is undisputed that she [the mother] has standing, as next friend, to assert the claims of her daughters." *Id.* at 1009 fn. 4. Thus, in light of a lack of controlling law to the contrary, and in conjunction with the Fifth Circuit case, this Court holds that Franks does have standing as next friend of H.B.L. to pursue the Title IX claim.

### 2. Failure to State a Claim

Defendants contend that Franks' factual allegations are insufficient to state a claim under Title IX on the grounds that there is no private cause of action against individuals under Title IX and the School and the Board are not liable under Title IX.

### a. Whether a private cause of action against individuals is available under Title IX.

■ This Court agrees with defendants' uncontroverted argument that plaintiff has

no private cause of action against individual defendants, as individuals may not be held personally liable under Title IX. *See Clay v. Board of Trustees of Neosho Cty. Community,* 905 F.Supp. 1488 (D.Kan.1995); *Bowers v. Baylor Univ.,* 862 F.Supp. 142 (W.D.Tex. 1994); and *Doe v. Petaluma,* 830 F.Supp. 1560 (N.D.Cal.1993). Under Title IX, a plaintiff may only proceed against the educational institution for violations of Title IX. *Id.* Accordingly, Franks' Title IX claim against defendants in their individual capacities must be dismissed.

#### b. Whether Title IX encompasses a claim based solely on student-on-student sexual harassment.

■ The Circuits are split on the issue of whether or not Title IX encompasses a claim for intentional discrimination on the basis of sex when grounded only upon student-on-student sexual harassment. Unfortunately there is not a minority or majority, as only two circuits have spoken.

The 11th Circuit and several federal district courts have held that a plaintiff may bring a Title IX claim against an educational institution for sexual discrimination based on student-on-student sexual harassment and/or sexual abuse. *Davis v. Monroe County Board of Education,* 74 F.3d 1186 (11th Cir. 1996); *Bosley v. Kearney R–1 School District,* 904 F.Supp. 1006 (W.D.Mo.1995); and *Doe v. Petaluma City School District,* 830 F.Supp. 1560 (N.D.Cal.1993), *on reconsideration,* 949 F.Supp. 1415 (N.D.Cal.1996). An analysis of what the plaintiff must allege and prove to support such a claim is outlined in the following section.

The Fifth Circuit and several federal district courts have held that Title IX does not provide relief for student-on-student sexual harassment even when the Institution has notice of the harassment and fails to take appropriate measures to remedy the situation. *Rowinsky v. Bryan Independent School District,* 80 F.3d 1006 (5th Cir.1996). Rather, these Courts hold that absent an allegation and proof that the school district responded to sexual harassment claims brought by females differently than those brought by males, it cannot be held liable for student-on-student sexual harassment. *Id.*

This Court opts to follow the lead of the Eleventh Circuit, as it equates sexual harassment/hostile environment in an educational setting with sexual harassment/hostile environment in the workplace.

#### c. Elements of a Title IX claim for student-on-student sexual harassment in support of an intentional discrimination on the basis of sex claim.

■ The elements of a Title IX claim for student-on-student sexual harassment, as determined by those Courts which equate student-on-student sexual harassment with intentional discrimination on the part of the School in certain situations, are set forth below. A claim under Title IX must be supported by proof of intentional discrimination on the basis of sex on the part of the institution. *Bosley v. Kearney R–1 School District,* 904 F.Supp. 1006, 1020 (W.D.Mo. 1995). Where Title IX law is silent, various courts direct us to borrow from the volumes of Title VII law. *See e.g., Bosley,* 904 F.Supp. at 1021 (recognizing the similarities between Title IX and Title VII and applying Title VII standards to a Title IX student-on-student sexual claim).

Borrowing from Title VII case law, the Court in *Bosley* set forth the elements of an intentional sexual discrimination claim based on a hostile environment. The elements are as follows: 1) the plaintiff belongs to a protected group; 2) the plaintiff was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment affected a term, condition, or privilege of [the plaintiff's education]; and 5) defendants knew or should have known of the harassment and failed to take proper remedial action. *Id.*

As applied to the case at bar, it is undisputed that H.B.L., as a female, is a member of a protected group. Second, there is evidence in the record in affidavit form to support the assertion that H.B.L. was raped, physically beaten and sexually abused and harassed, which far exceeds the element of unwelcome sexual harassment. Third, it is presumed that the harassment was based on H.B.L.'s sex. Fourth, it can be legitimately

argued that the harassment was sufficiently severe or pervasive so as to alter the conditions of her education and create an abusive educational environment.[2] It is over the fifth element, that the parties squabble.

 Plaintiff urges the Court to apply the "knew *or should have known*" standard utilized in a Title VII analysis. In support of her stance, she cites cases which call for the use of Title VII law in the absence of Title IX law. She relies on the application of the "knew or should have known" standard in cases with facts similar to those of the case at bar. *See, Bosley*, 904 F.Supp. at 1023 (stating, "to establish a basis for imputing conduct to an employer in Title VII cases where the claim involves peer-on-peer harassment or harassment by third parties, an employer may be held liable if it is established that the employer knew or should have known of the hostile environment and took no or insufficient remedial action."); *Davis v. Monroe County Board of Education*, 74 F.3d at 1195 (applying the "knew or should have known" standard to a student-on-student sexual harassment case). Not cited by plaintiff, but in support of her position, the Court in *Canutillo Independent School District v. National Union Fire Ins. Co.*, 900 F.Supp. 844 (W.D.Tex.1995), states, "This Court interprets Title IX so as to require proof, by a preponderance of the evidence, that the school district was *negligent or* acted with *recklessness or intentionally discriminated.*" *Id.* at 847 (emphasis added). Surely, in finding "negligent conduct", the Court would apply the less strict "knew or should have known" standard.

 Under the "knew or should have known" standard, in order for a plaintiff to demonstrate that the School "knew or should have known", she must prove that she "complained to higher management about the harassment or by showing the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge." *Davis*, 74 F.3d at 1195. Given the facts as set forth in the record, it is possible that H.B.L. may be able to meet the standard. She swears, via affidavit, that early in the 1994–95 school year she informed her "house parent"[3] Norma Smothers ("Smothers") about the sexual harassment of H.B.L.'s friend by Kevin Hoheimer. H.B.L. asserts that Smothers called Hoheimer's dorm parent to relay H.B.L.'s complaint. H.B.L. states that Smothers indicated that she would write up a report summarizing the problem. In November 1994, after allegedly being physically assaulted and sexually harassed herself by Hoheimer, H.B.L. reported the incident to Smothers. H.B.L. states that in November 1994, she also discussed Hoheimer's alleged harassment and assaults with Debbie Morrison ("Morrison"), the girls' dormitory supervisor and Smothers' boss. H.B.L. contends that after being allegedly sexually abused in late November and early December 1994, she reported said assaults to Smothers. She states that Hoheimer assaulted and harassed her throughout February, March, and April 1995, and that she reported some but not all of the incidents. She reports that in April 1995, Morrison advised her that she was aware of all of the reports that H.B.L. had filed against Hoheimer. Defendants claim that they did not have knowledge of the incidents preceding the alleged rape of H.B.L. *See* Affidavit of Superintendent Harvey Corsen.

Defendants argue that in a Title IX case, a plaintiff must allege and prove intentional discrimination and that it is not enough that the school *should have known.* Defendants reject the application of the Title VII standard. Rather, defendants assert that plaintiff must prove that the school intentionally discriminated against plaintiff. *See Doe v. Petaluma City School District*, 830 F.Supp. 1560. On reconsideration in light of develop-

---

**2.** The Court in *Davis* guides the Court with respect to an analysis of this element:

In determining whether a plaintiff has established that an environment is hostile or abusive, a court must be particularly concerned with: (1) the frequency of the abusive conduct; (2) the conduct's severity; (3) whether it is physically threatening or humiliating rather than merely offensive; and (4) whether it unreasonably interferes with plaintiff's performance.

74 F.3d at 1194.

**3.** H.B.L. lived on campus in Bruce Hall, a girls dormitory presided over by Norma Smothers.

ing case authority in this rapidly changing area of law, the Northern District of California stated:

> The Court specified that, in proving intentional discrimination, "it is not enough that the institution knew or should have known of the hostile environment and failed to take appropriate action to end it," because that standard, applicable to Title VII claims for sexual harassment in the workplace, was not "the equivalent of 'discriminatory animus,'" but rather was "in essence a negligence standard." The Court explained that plaintiff would be required to prove under its ruling as follows:
>
> > The school district must be found to have intentionally discriminated against the plaintiff student on the basis of sex. The school's failure to take appropriate action, as alleged in plaintiff's complaint, could be circumstantial evidence of intent to discriminate. Thus a plaintiff student could proceed against a school district on the theory that its inaction (or insufficient action) in the face of complaints of student-[on]-student sexual harassment was a result of an actual intent to discriminate against the student on the basis of sex.

*Doe,* 949 F.Supp. at 1416–17.

Further, defendants contend that because plaintiff does not allege that the State Board "failed to implement policies or procedures to prevent or discover incidents of sexual discrimination or ... that once the discrimination has been discovered failed to act in an appropriate manner," *Canutillo Indep. School District,* 900 F.Supp. at 847, she has not asserted a claim under Title IX. Aside from *Doe,* defendants fail to cite any applicable case law. Instead, defendants rely on cases that do not involve harassment of any sort, in which Courts held a violation of Title IX requires an intentional discriminatory act and that disparate impact alone is not sufficient to establish a violation. *See e.g., Cannon v. University of Chicago,* 648 F.2d 1104 (7th Cir.1981) *cert. denied,* 454 U.S. 1128, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981) (medical school applicant case); *Nagel v. Avon Board of Education,* 575 F.Supp. 105 (D.Conn.1983) (school appointment of chairpersons case).

In light of the cases cited by plaintiff, this Court finds that the "knew or should have known" standard is the proper standard to use in a Title IX analysis. Further, the Court finds that plaintiff's complaint sufficiently sets forth a claim under Title IX, as she alleges a Title IX violation and states that the School discriminated against H.B.L. on the basis of her sex and that the School knew or should have known about the prior incidents leading up to the rape of H.B.L. and failed to remedy the situation. The facts which support the bare assertions are set forth in H.B.L.'s affidavit.

**d. Whether, as a matter of law, the School may be held liable for the wrongful actions of its employees.**

■ Defendants argue that the School escapes liability because it cannot be held liable for it's employees' conduct which falls outside the scope of the employee's employment. *Floyd v. Waiters,* 831 F.Supp. 867, 876 (M.D.Ga.1993). Defendants assert that "any employee who knew of two rapes of H.B.L. [sic, plaintiff stated that two incidents of harassment predated the single rape of H.B.L.] and failed to take prompt remedial action to prevent the alleged May 2, 1995, sexual assault and rape of H.B.L., would obviously have engaged in conduct unauthorized by the School".

Countering, plaintiff contends that whether the harassing conduct of a supervisor or coworker should be imputed to the employer is determined in accordance with common-law principles of agency. *Davis v. Monroe County Board of Education,* 74 F.3d at 1195, *citing Meritor Savings Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986). Thus, plaintiff argues that the same analysis should apply to the facts at bar. Plaintiff correctly asserts that under the agency theory of respondeat superior, courts hold "employers liable for a hostile environment created by a coworker where the plaintiff can show that 'the employer knew or should have known of the harassment in question and failed to take prompt remedial action.'" *Davis,* 74 F.3d at 1195.

Accordingly, this Court finds that the School may be held liable for the actions of its employees in certain situations.

### e. Damages available under a Title IX claim.

■ It is now settled that under Title IX a plaintiff may seek injunctive relief *and* recover monetary damages if she proves intentional discrimination based on the plaintiff's sex. *See Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992); *Bosley,* 904 F.Supp. at 1020–1023.

### 3. Whether Defendants Are Entitled to Immunity with Respect to State Law Claims.

■ The second count of the complaint is based upon Kentucky tort law and alleges that defendants were negligent for failing to provide adequate security and supervision and to exercise reasonable care for the safety of all students with participation in school activities, programs, and events. This portion of the complaint, to the extent that it names the Board, the School, and defendants in their official capacities, is barred by the U.S. Constitution, Eleventh Amendment, and the Kentucky Constitution, § 231. *See e.g., Hans v. Louisiana,* 134 U.S. 1 (1890) (Eleventh Amendment bars suits brought in federal court against the state where the citizen resides); *Thiokol Corp. v. Department of Treasury, State of Mich., Rev. Div.,* 987 F.2d 376 (6th Cir.1993); *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (a suit against persons in their official state capacities is a suit against the state); *Reeves v. Jefferson County,* 245 S.W.2d 606 (1951) (addressing where suits against the Commonwealth of Kentucky shall be brought); and *Motors Ins. Corp. v. Commonwealth, Dept. of Highways,* 336 S.W.2d 44 (1960) (negligence claims filed against the Commonwealth must be brought before the Board of Claims for adjudication).

Accordingly, all state claims against the School, the Board, and defendants in their official capacities must be dismissed, as they are barred by the Eleventh Amendment of the U.S. Constitution and Section 231 of the Kentucky Constitution.

### 4. Whether Defendants are Entitled to Eleventh Amendment Immunity with Respect to the Title IX Claim.

The Rehabilitation Act Amendments of 1986, 42 U.S.C. § 2000d–7, provides in part:

1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of ... Title IX of the Education Amendments of 1972 ... or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

*Id.* By promulgating the above-referenced statute, it was Congress' intent to abrogate the States' Eleventh Amendment immunity.[4] *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). Before the disposition of *Seminole Tribe of Florida v. Florida,* — U.S. —, 116 S.Ct. 1114, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), it would have been crystal clear that States were not immune to Title IX suits. However, the Supreme Court in *Seminole* held that Congress' power to abrogate the States' sovereign immunity by express statement is no longer unlimited. *Id.* (holding that the Indian Commerce Clause does not grant Congress the power to abrogate the States' sovereign immunity).

■ The Supreme Court in *Seminole* held that Congress may not abrogate the Eleventh Amendment immunity unless it acts "pursuant to a valid exercise of power."

---

4. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of any foreign State." U.S. CONST. amend. XI.

*Id.* at 1123. Thus, Congress may only abrogate Eleventh Amendment immunity if "the Act in question passed pursuant to a constitutional provision granting Congress the power to abrogate." *Id.* at 1125. To date, Supreme Court has only recognized two provisions of the United States Constitution which permit Congress to abrogate Eleventh Amendment Immunity: the Fourteenth Amendment and the Interstate Commerce Clause, U.S. Const. art. I, § 8, cl. 3. *Id.* Because the Supreme Court overruled *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), in *Seminole,* the Fourteenth Amendment stands alone as the sole provision which grants Congress the authority to abrogate the Eleventh Amendment. *Id.* at 1128.

■ When Congress enacted Title IX, it did not expressly state its authority for passing the legislation. Additionally, the Supreme Court has not specifically identified Congress' constitutional authority for the enactment of Title IX. *Mississippi University for Women v. Hogan,* 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982); *Franklin,* 503 U.S. 60, 112 S.Ct. 1028. Defendants submit that Congress acted pursuant to the Spending Clause of the U.S. Constitution. *See Grove City College v. Bell,* 687 F.2d 684, 691–692 (3rd Cir.1982) (stating "Title IX like Title VI was designed 'to avoid the use of federal resources to support discriminatory practices.' "); *Favia v. Indiana University of Pennsylvania,* 812 F.Supp. 578 (W.D.Pa. 1992), *aff'd,* 7 F.3d 332 (3rd Cir.1993). Defendants reason that because the legislative history of Title VI indicates that it is Spending Clause legislation, by analogy, the similar Title IX is also Spending Clause litigation. Defendants conclude that because Title IX was promulgated pursuant to the Spending Clause, Congress did not have the authority to abrogate States' sovereign immunity. In conclusion, defendants assert that they are shielded in this Court from plaintiff's Title IX claim.

Because defendants submitted this argument on December 17, 1996, as an addendum to their motion for judgment on the pleadings, or in the alternative, for summary judgment, plaintiff has not yet responded. However, this Court is confident that plaintiff's response will not alter the Court's conclusion.

To date, since the Supreme Court's decision in *Seminole,* only four cases have been reported which discuss Congress' power to abrogate the States' sovereign immunity pursuant to 42 U.S.C. § 2000d–7. Unfortunately none of the cases deal with a State's immunity from Title IX suits. Thus, this is an issue of first impression.

The cases which discuss Congress' power to abrogate the States' sovereign immunity are: *Niece v. Fitzner,* 941 F.Supp. 1497 (E.D.Mich.1996) (held because the ADA contains unequivocal expression of congressional intent to abrogate immunity, and was enacted pursuant to a proper exercise of the broad congressional power to enforce provisions of the Fourteenth Amendment, the State was not immune from an ADA suit); *Hunter v. Chiles,* 944 F.Supp. 914 (S.D.Fla.1996) (held defendants were subject to plaintiff's claims brought under the federal Medicaid law, Title II of the ADA, and Section 504 of the Rehabilitation Act of 1973, because Congress properly abrogated the States' Eleventh Amendment immunity pursuant to an exercise of its congressional power to enforce the Fourteenth Amendment); *Mayer v. University of Minnesota,* 940 F.Supp. 1474 (D.Minn. 1996) (held the State was not immune from claims brought under the ADA utilizing the same rationale as in *Niece* ); *Clemes v. Del Norte County United School,* 1996 WL 331096 (N.D.Cal.1996) (held the State was immune from claims brought under the False Claims Act in federal court because the statute does not unequivocally abrogate Eleventh Amendment Immunity and in dicta because Congress does not have the authority to deshield the States from claims brought under the FCA, as it is not within the purview of the Fourteenth Amendment).

In short, the analysis is as follows: (1) did Congress unequivocally intend to abrogate the states' immunity in suits brought under Title IX when it promulgated § 2000d–7(a)(1); and (2) was Title IX (or § 2000d–7(a)(1)) promulgated pursuant to the Fourteenth Amendment, Congress' sole source of abrogating States' sovereign immunity. The Court easily answers the first question in the

affirmative. The second question is more difficult to answer, as it is an issue of first impression. One could argue, as the defendants do, that Title IX is Spending Power legislation. However, because the focus of Title IX is to stamp out discrimination on the basis of sex in an educational setting and because § 2000d–7(a)(1) deals with statutes that prohibit discrimination, specifically discrimination on the basis of handicap, sex, age, and race, color and national origin, by entities receiving federal funds, this Court holds that Title IX and § 2000d–7(a)(1) fall under the umbrella of the Fourteenth Amendment. Thus, Congress properly abrogated the States' Eleventh Amendment immunity, and the School is subject to plaintiff's Title IX claim.

### 5. Supplemental Jurisdiction

■ Defendants urge the Court to exercise its discretion to refuse to exercise supplemental jurisdiction over the state law claims before the Court. Pursuant to 28 U.S.C. § 1367, defendants argue that there are at least two applicable grounds for this Court to decline to exercise supplemental jurisdiction. First, defendants contend the negligence claim against the defendants in their individual capacities substantially predominates over the claim brought against them pursuant to Title IX. Second, the defendants argue that this Court should dismiss the Title IX claim brought against these defendants in their individual capacities because there is no private cause of action under Title IX against individuals.

Because the Court is dismissing the only federal claim lodged against the individual defendants, this Court will no longer have jurisdiction over the defendants in their individual capacities. Therefore, the Court will decline to exercise its supplemental jurisdiction over the only remaining state law claims.

### III. MOTION BY DEFENDANT, THE SCHOOL, TO STRIKE FRANKS' AFFIDAVIT

■ Franks, H.B.L.'s mother, submitted her own affidavit with her response to defendants' motion for judgment on the pleadings, or alternatively, for summary judgment. Defendants claim that she includes in her affidavit vague and conclusory allegations which should be stricken pursuant to Fed. R.Civ.P. 56(e). Defendants contend that Franks has no personal knowledge regarding the conclusory allegations in her affidavit; Franks' conclusory statements would not be admissible in evidence because they are based on inadmissible hearsay; and finally that the affidavit does not set forth specific facts showing that there is a genuine issue for trial. Franks responded by tendering an affidavit by her daughter, H.B.L.

Because the Court is of the opinion that Franks' affidavit is conclusory and not based on personal knowledge, it will be stricken.

### IV. MOTION BY PLAINTIFF, FRANKS, FOR LEAVE TO SUPPLEMENT PLAINTIFF'S RESPONSE WITH TENDERED AFFIDAVIT OF H.B.L.

Pursuant to Fed.R.Civ.P. 56(f), Franks asks this Court for leave to file H.B.L.'s Affidavit in the interest of justice. Franks states that H.B.L. was hospitalized for treatment of liver rejection due to her voluntary cessation of her life-sustaining medication at the time of the filing of plaintiff's response to the defendants' motion for summary judgment. She states that because H.B.L. was not available to counsel for affidavit, Franks submitted her own affidavit. Now, Franks would like to submit her daughter's detailed affidavit of the events leading up to, and occurring on, the day H.B.L. was allegedly raped.

Defendants oppose Franks' motion. They contend that she should not be allowed to supplement her response. Defendants argue Franks may not use Rule 56(f) to supplement her response with H.B.L.'s affidavit. Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavit to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Defendants argue that because this motion is untimely (i.e., it should have been filed with Franks' affidavit) and because H.B.L. is not a party to the action, Franks may not amend her response pursuant to Rule 56(f). Further, defendants argue that Franks is attempting to obtain an expansion of time to file her response pursuant to LR 6(b)(1)(A), after defendants have filed their reply, and that granting her "the last word" would be unfair. Finally, defendants submit that it is unclear from H.B.L.'s affidavit as to when she was unavailable due to her hospitalization.

Although defendants cite cases which they contend support their position, the Court does not read those cases to justify not allowing H.B.L.'s affidavit to be filed and considered when this Court decides whether or not to grant defendants' motion for summary judgment. The Court exercises its discretion to allow Franks to amend her response with the filing of H.B.L.'s affidavit.

## V. MOTION BY PLAINTIFF, FRANKS, FOR LEAVE TO AMEND THE COMPLAINT

Franks moves the Court for leave to amend the complaint for the purpose of adding H.B.L., pursuant to Fed.R.Civ.P. 15, in the event that this Court determines that the minor child must bring her own claim under Title IX. Defendants object and argue that because Franks lacks standing, she cannot amend the complaint, because it is not *her* complaint. Defendants state that Rule 15 may be used to join additional defendants, not plaintiffs. Further, defendants argue that plaintiff's Rule 15 motion is actually a Rule 24 motion seeking to permit a nonparty to intervene in an existing action, or a Rule 25 motion seeking substitution of parties. Because defendants argue that Franks does not have a viable claim, as she lacks standing, defendants submit that there is no case in which H.B.L. can intervene or in which she can be substituted. Defendants contend that the proper course of action is for H.B.L. to file her own complaint.

The Court exercises its discretion to allow Franks to amend her complaint and add H.B.L. as a plaintiff to the action.

## VI. MOTION BY PLAINTIFF, FRANKS, TO SEAL THE RECORD

Franks requests that the record be sealed for access only by the attorneys for the parties. She states that the matter at bar concerns the violation and victimization of a minor and should be sealed to avoid public scrutiny.

Defendants do not strongly object to sealing some or all of the court record to the press and the public at large, but defendants do object to the closing of the record to the parties and potential witnesses to this action. Defendants argue that plaintiff has not provided the Court with sufficient facts, arguments, and legal authority that would enable the Court to articulate "compelling countervailing interests to be protected, make specific findings on the record concerning the effects of disclosure, and provide an opportunity for interested third parties to be heard," before sealing the record. *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3rd Cir.1994). Defendants assert that plaintiff must demonstrate that disclosure will cause a clearly defined and serious injury in order for the court to by-pass the common law right of public access to judicial records. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3rd Cir.1995); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3rd Cir.1994); *Miller*, 16 F.3d at 551.

The Court exercises its discretion not to seal the record. However, if plaintiff desires to use H.B.L.'s initials, rather than her full name, the Court will so order it.

## VII. CONCLUSION

Accordingly, IT IS HEREBY ORDERED AND ADJUDGED that:

(1) defendants' motion for summary judgment IS DENIED TO THE EXTENT THAT defendants contend that:

(a) Holly Franks, lacks standing to pursue this matter as next friend of H.B.L.;

(b) student-on-student sexual harassment will not support a Title IX claim;

 

(c) the agency theory of respondeat superior is inapplicable in a Title IX case; and

(d) defendants are entitled to Eleventh Amendment Immunity with respect to the Title IX claim.

(2) defendants' motion for summary judgment IS GRANTED TO THE EXTENT THAT defendants contend that:

(a) plaintiff has no private cause of action against individual defendants under Title IX;

(b) the School, the Board and the individual defendants in their official capacities are immune from state law claims pursuant to the Eleventh Amendment of the U.S. Constitution and Section 231 of the Kentucky Constitution; and

(c) this Court should refuse to exercise supplemental jurisdiction over the state law claims against the individual defendants in their individual capacities.

Thus, THE TITLE IX CLAIM AGAINST THE DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES SHALL BE DISMISSED; THE STATE LAW CLAIMS AGAINST THE SCHOOL, THE BOARD AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES SHALL BE DISMISSED; AND THE STATE LAW CLAIMS AGAINST THE DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES SHALL BE DISMISSED;

(3) defendants' motion to strike Franks' affidavit IS GRANTED;

(4) plaintiff's motion to amend her response to defendants' summary judgment motion IS GRANTED, and thus H.B.L.'s AFFIDAVIT SHALL BE FILED;

(5) plaintiff's motion for leave to amend her complaint for the purpose of adding H.B.L. as a plaintiff in the above-styled action IS GRANTED; and

(6) plaintiff's motion to seal the record IS DENIED.