Pamela **PARKER**, et al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. No. 79–1878.**

United States District Court,
District of Columbia.

July 29, 1983.

Michael J. Eig, Chevy Chase, Md., for plaintiffs.

Richard S. Love, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN GARRETT PENN, District Judge.

The plaintiffs filed this action pursuant to the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1400 *et seq.*, to obtain a declaratory judgment, injunctive relief, and damages, as the result of the alleged failure of the District of Columbia Public School (DCPS) to provide Pamela Parker (Pamela) with a free appropriate public education for school year 1978–1979, and to make ·provisions for providing her with such an education for school year 1979–1980. Pamela· attended Kingsbury Lab School (Kingsbury) in 1978–1979 at her parents expense. This case was filed in July 1979 and in September, the Court granted plaintiffs motion for a preliminary injunction and directed DCPS to place and fund Pamela at Kingsbury pending further order of the Court. *See* Memorandum Order filed September 10, 1979 and Order filed September 12, 1979. Pursuant to that Order, DCPS placed and funded Pamela at Kingsbury for the 1979–1980 school year.

The only remaining issue is whether the plaintiffs are entitled to damages and/or reimbursement for the 1978–1979 school year and whether they are entitled to attorneys fees. The case is now before the Court on plaintiffs' motion for summary judgment and the defendants' cross motion for partial summary judgment.

### I

Briefly, the undisputed facts are as follows: At the time this action was filed, Pamela was eleven years old and had been diagnosed as severely learning disabled with severe emotional problems. In December 1977, she was attending special education classes four days a week at the Whittier Learning Center and regular classes one day a week at Shepard School. Both schools were operated by DCPS. At that time, her parents became very concerned about her schooling and they notified DCPS officials that Pamela was having severe emotional and educational problems including a lack of academic progress and fear of going to school. The parents made arrangements to have Pamela evaluated at Kingsbury and at Children's Hospital and thereafter requested that she be placed at Kingsbury for the 1978–1979 school year. Pamela had attended summer school at Kingsbury in 1977 and in 1978. DCPS proposed Whittier-Shepard for the

1978–1979 school year and the parents requested a due process hearing. The hearing was held on July 10, 1978, and the Hearing Officer filed his determination (1978 Determination) on July 28, 1978. DCPS had proposed that Pamela remain at Whittier but increase her participation in the mainstream up to two hours per day as stated in the Individual Education Program (IEP).

The Hearing Officer found that Pamela was handicapped, that she required special education, and that the IEP failed "to address the emotional component associated with Pamela's deficiencies." 1978 Determination at 15. He noted that DCPS and the IEP failed to recognize the importance of Pamela's emotional problem. *Id.* He concluded that DCPS "has failed to adequately recognize this component, has not assessed it properly, and must include it as an integral part of Pamela's educational program." *Id.* The Hearing Officer also found that "[a]s far as the overall program ... at [Whittier] is concerned, ... the weight of the evidence and testimony is in favor of [DCPS]." *Id.* at 16. The Hearing Officer then went on to find that the notion of mainstreaming Pamela and the "least restrictive environment" are "valid components in special education programs" but that the record before him revealed that "the attempt to mainstream Pamela this past year [1977–1978] has not been successful and in fact has been harmful to her, perhaps even intensifying her extant emotional and academic difficulties." *Id.* He "concluded and determined that similar mainstreaming efforts for Pamela will similarly be unsuccessful." *Id.* Finally, he directed that, "[DCPS] must produce an alternative proposal with respect to mainstreaming Pamela." *Id.*

DCPS never contacted the plaintiffs from the date of the 1978 Determination to the beginning of the school year in September 1978. Parker Affidavit, ¶ 6. In early September 1978, plaintiffs wrote DCPS and in the second week of September, DCPS responded assuring them that Pamela would "be taken care of" but failing to address the substance, timing or location of her placement. *Id.* ¶ 8. DCPS did not send a new proposed program until March 1979 and at that time proposed a program virtually the same as that proposed in June 1978. *Id.* ¶ 9.

A second due process hearing was held on April 17, 1979, and the same Hearing Officer who conducted the initial hearing, filed his Determination on June 11, 1979 (1979 Determination). The plaintiffs state that they placed Pamela in Kingsbury during the 1978–1979 school year because she had no other appropriate placement and they were concerned that DCPS was not going to act.

Significantly, the Hearing Officer found that DCPS failed to follow through on the 1978 Determination, "particularly in time for Pamela to have an appropriate placement by the opening of school last fall [1978]." 1979 Determination at 6. He also found that, "it is determined that when Pamela started her attendance at [Kingsbury], there was no program developed by [DCPS] to adequately meet her educational needs since the current IEP is determined to be inappropriate." *Id. at 7.*

## II

Although the EAHCA is not intended generally to provide for a money award for plaintiffs, there are rare occasions when such relief is proper and warranted. The EAHCA, specifically 20 U.S.C. § 1415(e)(2), provides that a party aggrieved by the administrative determination may file a civil suit in any state court of competent jurisdiction or in a district court of the United States and that the court "shall grant such relief as the court determines is appropriate." In most cases brought before it, the Court, where the plaintiffs prevailed and relief was appropriate, has ordered DCPS to place and fund a child in a particular school or program. In at least one case, the Court has found that upon an appropriate showing, it could direct that a child receive what amounts to "compensatory education" when a child has already reached her 22nd birthday. *See Bennett v. District*

*of Columbia Board of Education,* No. 82–0224 (D DC April 22, 1983). And in the latter case, the Court noted that compensatory education is virtually indistinguishable from tuition reimbursement, which is what the plaintiffs seek here. *Id.,* slip op at 3.

 The EAHCA allows the Court to grant tuition reimbursements if it determines that such relief is appropriate. *See Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981); *Parks v. Pavkovic,* 536 F.Supp. 296 (ND Ill.1982). Such relief, however, is usually given only under exceptional circumstances such as when to allow the child to remain in her prior placement would result in serious risks to the child's health or where the defendants have acted in bad faith. *Anderson, supra,* 658 F.2d at 1213–1214. Moreover, this Court agrees with the determination of the above courts that such relief is not foreclosed by the Eleventh Amendment to the Constitution. *See Bennett v. District of Columbia Board of Education, supra,* slip op. at 3–5. Of course, any award is in effect an award against the District of Columbia.

 The facts in this case support an award for tuition reimbursement. Pamela had been in a DCPS placement at Whittier Learning Center and Shepard School for the 1977–1978 school year. Her parents requested a change in placement and recommended that she be placed in Kingsbury, where she had attended summer school, for the 1978–1979 school year. DCPS rejected that recommendation and advised the parents of its intention to return her to Whittier—Shepard. Up to this point, Pamela's "present educational placement" was Whittier—Shepard, and normally she would be required to remain there pending the completion of the proceedings. *See* 20 U.S.C. § 1415(e)(3) and 34 CFR § 300.513. But Section 1415(e)(3) contemplates that the plaintiffs will be accorded due process and that the administrative proceedings and resulting action by DCPS will be conducted according to the appropriate statute, the federal rules promulgated thereunder, and the local school board rules.

Such was not the case here because after Pamela had sought and obtained an administrative hearing before an impartial Hearing Officer, and after the officer issued his 1978 Determination, DCPS failed to adequately respond. Although DCPS contends that it "won" at the hearing and although the Hearing Officer did state that the weight of the evidence favored DCPS, he also made quite clear that the IEP was inadequate and that DCPS and the IEP failed to address Pamela's emotional problems. Indeed, he found that the attempt to mainstream Pamela during the 1977–1978 school year was unsuccessful and "in fact has been harmful to her, perhaps even intensifying her extant emotional and academic difficulties." 1978 Determination at 16.

The record reveals that DCPS did not follow through to correct the deficiencies noted by the Hearing Officer even after having been requested to do so by the parents. As a result, a new proposed program was not submitted until March 1979 and the Hearing Officer determined that that program was inappropriate. *See* 1979 Determination. In that latter determination, the Hearing Officer found that Pamela did not have an adequate program for the 1978–1979 school year. 1979 Determination at 7.

In this case the Court concludes that there was a danger that Pamela's health would have been adversely affected but for the parents placing her in Kingsbury, and that the failure of DCPS to follow the determination of the Hearing Officer amounted to bad faith. Plaintiffs are now entitled to reimbursement for the payments they were required to make to place Pamela in Kingsbury for the 1978–1979 school year. The Court notes that this case is distinguishable from *Foster v. District of Columbia Board of Education,* 523 F.Supp. 1142 (D DC 1981), since in that case, the parents made no effort to pursue their administrative or judicial remedies.

## III

The Court finds and concludes that the plaintiffs are entitled to reimbursement for

**522**

the 1978–1979 school year in the amount DCPS would have been required to pay under the EAHCA. Plaintiffs have included a tort claim in their complaint but the Court does not read the EAHCA as permitting such a claim. In any event, the tort claim is denied; defendants being entitled to dismissal of that claim as a matter of law. The award for reimbursement only represents what DCPS was required to pay in 1978–1979.

The question now presented is whether a judgment may be entered against the named defendants, and whether it must or can be entered against the District of Columbia.

■ A distinction must be drawn between a case in which the plaintiff seeks damages and a case in which plaintiff seeks injunctive relief. If the plaintiff seeks money damages, he "must name the District [of Columbia] as a party if the District funds are to be reached." *Keith v. Washington,* 401 A.2d 468, 471 (D.C.App.1979). *See also Roberson v. District of Columbia Board of Higher Education,* 359 A.2d 28, 31, n. 4 (D.C.App.1976); *Farrell v. Ward,* 53 A.2d 46, 50 (D.C.Mun.App.1947); D.C. Code 1–102 (1981). If the plaintiff seeks injunctive relief, he may sue the public officials, including in the appropriate case, the members of the Board of Education, or the superintendent. Here, there is no pending claim for injunctive relief.

■ Addressing only the issue of damages, the Court observes that the statute creating the Board of Education, D.C.Code 31–101 *et seq.* (1981), does not provide that the Board is a body corporate having the capability to sue or to be sued; accordingly, a suit for damages against the Board cannot survive. *Kelley v. Morris,* 400 A.2d 1045, 1047 (D.C.App.1979). Moreover, the members of the Board are not subject to liability for any official action of the Board performed in good faith. *Id. See also* D.C.Code 3–105 (1981). All of the individual defendants are sued in their official capacity, and the Court can find no basis upon which the individual defendants would now be liable for reimbursement.

Finally, the Court notes that the District of Columbia is not named as a party and, as stated above, normally there can be no recovery against it unless it has been named.

■ As the Court has noted, any award in this case is in effect an award against the District of Columbia since, as the Court understands it, the money will be paid from the District treasury. Of course, some of that money comes from federal funds paid to the District under the EAHCA. Thus, this action, to the extent that the plaintiffs seek damages can be considered as a suit against the District of Columbia. *See Spann v. Commissioners of District of Columbia,* 143 U.S.App.D.C. 300, 443 F.2d 715 (1970) (per curiam).

Although there normally can be no recovery against the District unless it is named as a party, "neither [*Roberson v. District of Columbia Board of Higher Education,* nor *Farrell v. Ward*] went so far as to say that even when the realities demonstrate that the District is an intended defendant, its omission as a formal matter is fatal to a plaintiff's suit." *Keith v. Washington, supra,* 401 A.2d at 471, n. 2. On so much of plaintiffs' claim which seeks money damages, the plaintiffs seek reimbursement for moneys they expended to afford Pamela an appropriate education for the 1978–1979 school year. They acted only when DCPS did not act and are now entitled to reimbursement to the extent that DCPS would have been liable for that year under the EAHCA. The District elected to receive funds under the EAHCA and therefore is bound to follow the requirements of the statute. Any payments to the plaintiffs would necessarily come from the District treasury. This being the case, it follows that the realities in this case demonstrate that the District, to the extent plaintiffs seek reimbursement, is the intended defendant. Moreover, the District cannot claim that its rights have been prejudiced because it was not named as a formal party, since the defendants were fully and adequately represented by the Office of the Corporation Counsel, which would have

represented the District had it been a formal party. Additionally, the Court notes that the involvement in EAHCA cases has not been limited to the Board of Education or to employees in the educational system, but rather, has included and includes the Department of Human Resources and its employees. At times there have been jurisdictional disputes as to who had the responsibility to take certain actions involving children requiring special education. *See e.g., North v. District of Columbia Board of Education,* 471 F.Supp. 136, 141 (D DC 1979) (dispute between Board of Education and Department of Human Resources as to who was responsible for residential placements). It is the Court's understanding that the dispute was only resolved with the intervention and assistance of the Chief Executive of the District. Finally, in this regard, the Court understands that uncontested awards for attorney fees in EAHCA cases have been paid out of the District treasury.

Based on all of the realities of this case, the Court concludes that this is, in effect, an action against the District of Columbia which is the intended defendant. Therefore, so that the complaint and order entered in the case will reflect the "realities" of the case; in recognizing that the plaintiffs seek reimbursement for funds expended from whatever source of the District of Columbia is required to make reimbursement, the Court treats plaintiffs' motion for summary judgment as one also requesting amendment to conform with the evidence, *see* Fed.R.Civ.P. 15, and sua sponte, amends the caption to include the District of Columbia as a defendant.

The claim here is for liquidated damages, but to the extent the plaintiffs *may* have been required to give notice of this action under D.C.Code § 12–309 (1981), the Court finds that plaintiffs' request for a special education placement and the subsequent administrative proceedings, afforded ample notice to the District of Columbia.

## IV

In sum, the Court now finds that the plaintiffs are entitled to reimbursement for payments made to Kingsbury to provide Pamela with an appropriate education for the 1978–1979 school year. The plaintiffs shall submit a statement setting forth the expenditures made for that school year. The Court also finds that the plaintiffs as the prevailing parties in this case, are entitled to attorneys fees. The plaintiffs shall submit their claims for attorneys fees and tuition reimbursement within fifteen days of the date of the Order.

An appropriate Order entering judgment for the plaintiffs as set forth above shall be entered.