Jessica G. HAINES, et al., Plaintiffs,

v.

METROPOLITAN GOVERNMENT OF DAVIDSON COUNTY, TENNESSEE, and Davidson County Board of Education, Defendants.

No. 3:96–1085.

United States District Court,
M.D. Tennessee,
Nashville Division.

July 17, 1998.

with prejudice, absent additional evidence, the Court is unable to fully determine the viability of these claims.

991992

Dennis Lanier Tomlin, Hendersonville, TN, for Jessica G. Haines, Stephen L. Haines.

William Michael Safley, Francis Howard Young, Metropolitan Legal Department, Nashville, TN, for Metropolitan Government of Nashville and Davidson County, Tennessee.

Francis Howard Young, Metropolitan Legal Dept., Nashville, TN, for Metropolitan Bd. of Educ.

*MEMORANDUM*

ECHOLS, Chief Judge.

Presently pending before the Court are the following motions: (1) Plaintiffs' Second Motion to Amend (Docket Entry No. 8), to which Defendants have not responded; (2) Defendant Metropolitan Board of Public Education's Motion to Dismiss (Docket Entry No. 4), to which Plaintiffs respond in opposition; and (3) Defendants' Motion to Dismiss Entire Case (Docket Entry No. 13), to which Plaintiffs also respond in opposition. For the reasons explained herein, the Court hereby GRANTS Plaintiffs' Second Motion to Amend. Plaintiffs shall file an Amended Complaint incorporating the changes authorized by the Court within thirty days from the date of entry of the accompanying Order. In addition, the Court hereby GRANTS Defendant Metropolitan Board of Public Education's Motion to Dismiss. Accordingly, the Metropolitan Board of Public Education is hereby DISMISSED from this action. Finally, the Court hereby DENIES IN PART and GRANTS IN PART Defendants' Motion to Dismiss Entire Case. In particular, Defendants' Motion is DENIED with respect to those claims asserted by Plaintiff Jessica Haines. Similarly, Defendants' Motion is DENIED with respect to those claims asserted by Plaintiff Stephen Haines as next of friend of Jessica. The Court GRANTS Defendants' Motion, however, with respect to the claims asserted by Plaintiffs Stephen Haines and Karon Haines in their individual capacities.

### I.

Plaintiffs filed this action under Title IX of the Education Act of 1972, 20 U.S.C. §§ 1681–1688, claiming that Plaintiff Jessica Haines ("Jessica") was subjected to repeated sexual harassment and sexual abuse at the hands of two of her classmates at Charlotte Park Elementary School in Davidson County, Tennessee. Plaintiffs allege that Defendants knew of the ongoing harassment but failed to take prompt and appropriate action to stop it. Defendants now move to dismiss Plaintiffs' Complaint in its entirety on grounds that Title IX does not provide a cause of action for peer sexual harassment. Defendants also contend that Plaintiffs Karon and Stephen Haines, Jessica's parents, must be dismissed from this action because they were never personally excluded from, denied the benefits of, or subjected to discrimination under an educational program or activity within the meaning of Title IX. Finally, Defendant Metropolitan Board of Public Education ("Board") moves the Court to dismiss it (the Board) from this action because it is not an entity that can be sued separately and distinctly from Defendant Metropolitan Government of Nashville and Davidson County ("Metropolitan Government").

### II.

As a preliminary matter, Plaintiffs seek to amend their Complaint to state correctly the names of Defendants. Defendants have not responded to Plaintiffs' Motion and apparently do not object to the proposed amendment.[1] Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend his or her complaint after a responsive pleading has been filed only by leave of court or by written consent of the opposing party. Rule 15(a) further provides that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Judging from the documents presently before the Court, it appears that the correct names of Defendants are as follows: (1) Metropolitan Government of Nashville and Davidson County, acting by and through the Metropolitan Board of Public Education, and (2) Metropolitan Board of Public Education. The Court believes that Plaintiffs should be afforded the opportunity amend their Complaint to reflect accurately Defendants' names. Accordingly, the Court GRANTS Plaintiffs' Second Motion to Amend.[2] Plain-

---

1. Pursuant to Local Rule 8(b)(3), a party opposing a motion shall file a response not later than ten days after service of the motion. Local Rule 8(b)(3) provides further that failure to file a response to a motion shall indicate that there is no opposition to the motion.

2. As discussed in Part III of this opinion, the Court finds that the Metropolitan Board of Public Education is not an entity that can be sued separately and distinctly from the Metropolitan Government of Nashville and Davidson County. Accordingly, Plaintiffs shall not include the Met-

tiffs shall file an Amended Complaint incorporating the changes authorized by the Court within thirty days from the date of entry of the accompanying Order.

### III.

Next, Defendant Metropolitan Board of Public Education contends that it must be dismissed from this matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because it is not a legal entity capable of being sued separately and distinctly from the Metropolitan Government of Nashville and Davidson County.

■ Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, the capacity of a governmental corporation to be sued in federal court is governed by the law of the state in which the entity was organized. *See* Fed. R.Civ.P. 17(b) ("The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized."); *see also* 4 James W. Moore, *Moore's Federal Practice* § 17.26[3], at 17–111 (3d ed. 1997) ("[T]he capacity of an entity charted by a state is determined by the organizing state's law."). "Political subdivisions of a state or local government have capacity only if the law creating them recognizes them as separate legal entities having capacity to sue or be sued." 4 Moore, *supra*, § 17.26[3], at 17–111; *see also Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313–14 (5th Cir.1991); *Avery v. County of Burke*, 660 F.2d 111, 113–14 (4th Cir.1981).

■ Under Tennessee law, the rights, powers, and duties of a municipal corporation such as Metropolitan Government are determined by the corporation's charter as well as the general law of the state. *See Barnes v. City of Dayton*, 216 Tenn. 400, 392 S.W.2d 813, 817 (Tenn.1965). As a general rule, these powers and rights are to be strictly construed. *See State ex rel. Kercheval v. City of Nashville*, 83 Tenn. (15 Lea) 697, 706 (1885); *see also Newman v. Ashe*, 68 Tenn. (9 Bax.) 380, 383 (1876). As explained by the Tennessee Supreme Court, municipalities, and the boards and commissions through which they operate, "may exercise only those express or necessarily implied powers delegated to them by the Legislature in their

ropolitan Board of Public Education as an inde-

charters or under statutes." *City of Lebanon v. Baird*, 756 S.W.2d 236, 241 (Tenn. 1988); *see also Barnes v. City of Dayton*, 216 Tenn. 400, 392 S.W.2d 813, 817 (Tenn.1965); *City of Chattanooga v. Tennessee Elec. Power Co.*, 172 Tenn. 524, 112 S.W.2d 385, 388 (Tenn.1938).

■ Section 1.01 of the charter of the Metropolitan Government of Nashville and Davidson County outlines the Metropolitan Government's basic powers and rights. This provision specifically provides that the Metropolitan Government shall have the capacity to sue and be sued. Sections 9.01 and 9.03 of the charter authorize the creation of the Metropolitan Board of Public Education and establish the Board's powers and duties. The powers and duties of the Board, unlike those of the Metropolitan Government, do *not* include the ability to sue and be sued. Construing the powers and duties of the Board strictly, as required by Tennessee law, the Court finds that the Metropolitan Board of Public Education is not capable of being sued separately and distinctly from the Metropolitan Government. In the words of one court, Plaintiffs' "suit no more can proceed against [the Board] alone than it could against the accounting department of a corporation." *Darby*, 939 F.2d at 313; *see also Parker v. District of Columbia*, 588 F.Supp. 518, 522 (D.D.C.1983) (concluding that suit for damages against the District of Columbia Board of Education could not survive because the statute creating the Board did not provide the Board with the capacity to sue or be sued); *M.R. v. Milwaukee Pub. Schs.*, 495 F.Supp. 864, 867 (E.D.Wis.1980) (reaching same conclusion with respect to the Wisconsin Department of Public Instruction).

■ This is not to say, of course, that the Board's alleged misconduct must go unpunished. The fact that the Board lacks the capacity to be sued does not mean that it is free to disregard Title IX's prohibitions. It simply means that Plaintiffs' lawsuit must be directed towards the appropriate division of government. While Title IX provides a cause of action for victims of sex discrimination, it does not "speak to whether a plaintiff should name a subdivision or the ultimate

pendent Defendant in their Amended Complaint.

employer on the first page of [the] complaint, and it [does] not provide an exception to the normal rule that a government entity may choose the level at which it will pursue and defend all lawsuits involving it." *Darby,* 939 F.2d at 314. Accordingly, Plaintiffs may seek redress for their injuries but must pursue their cause of action against that entity with the capacity to be sued. Under Tennessee law, such capacity lies with the Metropolitan Government and not the Metropolitan Board of Public Education. The Court, therefore, GRANTS the Board's Motion to Dismiss. Accordingly, the Metropolitan Board of Public Education is DISMISSED from this action.

## IV.

In the third and final motion pending before the Court, Defendants move to dismiss Plaintiffs' Complaint in its entirety on grounds that a cause of action for peer sexual harassment is not cognizable under Title IX. At a minimum, Defendants contend that Plaintiffs Karon and Stephen Haines, Jessica's parents, must be dismissed from this action as a matter of law because they were not personally excluded from, denied the benefits of, or subjected to discrimination under an educational program or activity within the meaning of Title IX.

### A.

It is well-settled that a court's task in analyzing the sufficiency of a complaint for the purpose of a motion to dismiss is necessarily narrow and limited. The issue is not whether a claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Moreover, in reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, a court must review the complaint in the light most favorable to the non-moving party, construing all of its allegations in his or her favor. *Id.* A complaint should not be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt that [non-moving party] can prove no set of facts in support of [his or her] claim which would entitle [him or her] to relief." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also G.M. Eng'r & Assoc. v. West Bloomfield Township,* 922 F.2d 328, 330 (6th Cir.1990) ("This court must accept all of the [claimant's] factual allegations as true and determine whether any set of facts consistent with the allegations would entitle [him or her] to relief." (citing *Dugan v. Brooks,* 818 F.2d 513, 516 (6th Cir.1987))).

### B.

Accepting Plaintiffs' allegations as true, as the Court must at this stage of the litigation, the factual basis for Plaintiffs' Complaint is as follows: From December 1995 until June 1996, Jessica Haines, a ten-year-old student at Charlotte Park Elementary School in Davidson County, Tennessee, was sexually harassed repeatedly by two, eleven-year-old, fellow students during regular school hours on school grounds. According to Plaintiffs, the two boys attempted to rape, assault, and abuse Jessica. Plaintiffs assert, for instance, that the boys on multiple occasions threw Jessica to the ground, laid on top of her in a sexual manner, fondled her buttocks, breasts, and genitals, and verbally abused her. During these episodes, the boys would tell Jessica that they were going to use a "rubber" on her and were going to have sex with her. The boys also asked Jessica if she was a virgin and if she had been raped before. Plaintiffs contend that Jessica was subjected to this and other forms of sexual harassment on twenty to thirty separate occasions.

Plaintiffs further contend that (1) Jessica's teacher, (2) the school principal, and (3) the Metropolitan Board of Public Education knew of the severity of the situation but failed to take prompt and appropriate remedial action. For example, Plaintiffs assert that on one occasion, Jessica passed a note to her teacher during class asking for help and protection against the assaults. The teacher tore up the note and ordered Jessica not to be a tattle tale. When Jessica's mother, Karon Haines, became aware of the sexual misconduct of the two boys, she complained not only to Jessica's teacher but to the school

principal as well. Neither took action to stop the sexual assaults and the two boys continued to terrorize Jessica. After Ms. Haines and another woman made continued complaints, the principal decided to question the two boys concerning their conduct. When the boys admitted to the sexual abuse, the principal punished them by placing them in a one day "in school" suspension. The punishment had little effect and the sexual assaults continued. Later, Jessica's psychiatrist informed the principal of the seriousness of the problem. Plaintiffs contend that the principal disregarded the psychiatrist's concerns and refused to take action to stop the ongoing abuse.

Jessica's mother also apprised the Metropolitan Board of Public Education of the situation. In fact, Ms. Haines apparently left seven to ten messages with the Board before a representative called her back. Plaintiffs claim that the Board representative was given each message and knew the reason for each call but intentionally and knowingly failed to take action. Meanwhile, Jessica continued to be sexually harassed. Sometime later, a spokesperson for the Board allegedly stated on television that Jessica was "the most supervised girl in school." Soon thereafter, Jessica was sexually assaulted again. In short, Plaintiffs claim that the agents and employees of the Metropolitan Government and the Metropolitan Board of Public Education ignored and trivialized the ongoing sexual harassment and abuse directed towards Jessica by her classmates.

Plaintiffs contend that the repeated sexual harassment caused Jessica to miss many days of school, resulting in lowered grades and an inability to complete required course work. Plaintiffs also assert that the continued sexual abuse interfered with Jessica's psychological, social, and physical well-being, as well as her ability to learn and perform in school. As a result, Plaintiffs claim that Jessica's economic potential has been diminished. Plaintiffs seek monetary damages under Title IX to compensate for such loss.

## C.

■ Title IX provides that "[n]o person in the United States shall on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any educational program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). It is well-established that sexual harassment of a student in a federally funded school by a teacher or employee of the school can render the school liable for damages under Title IX. *See Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 63–64, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). It is altogether unclear, however, whether a school receiving federal funds can be liable for failing to take prompt and appropriate action to remedy the known sexual harassment of one student by other students. To date, five courts of appeals have considered this particular question.[3] Three recognize a cause of action for peer sexual harassment under Title IX, *see Oona, R.S. v. McCaffrey*, 143 F.3d 473, 476, 1998 WL 196271 (9th Cir.1998); *Doe v. University of Illinois*, 138 F.3d 653, 661 (7th Cir.1998); *Brzonkala v. Virginia Polytechnic Inst.*, 132 F.3d 949, 958 (4th Cir.1997), *reh'g en banc granted, opinion vacated*, (Feb. 5, 1998), while two do not, *see Davis v. Monroe County Bd. of Educ.*, 120 F.3d 1390, 1399–401 (11th Cir.1997) (en banc), *petition for cert. granted*, 66 U.S.L.W. 3387, —— U.S. ——, 119 S.Ct. 29, 141 L.Ed.2d 789 (U.S.1998); *Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 1006, 1012 (5th Cir.1996), *cert. denied*, 519 U.S. 861, 117 S.Ct. 165, 136 L.Ed.2d 108 (1996).

Interestingly, the two circuits that refuse to recognize a Title IX cause of action for student-on-student sexual harassment do so for different reasons. In *Rowinsky v. Bryan Independent School District*, 80 F.3d 1006 (5th Cir.), *cert. denied*, 519 U.S. 861, 117 S.Ct. 165, 136 L.Ed.2d 108 (1996), a divided panel of the Fifth Circuit framed the determinative issue as "whether the recipient of federal education funds can be found liable for sex discrimination when the perpetrator

---

**3.** Although the Sixth Circuit has not yet addressed the issue, at least one district court within the Sixth Circuit has concluded that a claim for student-on-student sexual harassment is cognizable under Title IX. *See Franks v. Kentucky School for the Deaf*, 956 F.Supp. 741, 746 (E.D.Ky.1996), *aff'd on other grounds*, 142 F.3d 360 (6th Cir.1998).

is a party other than the grant recipient or its agents." *Id.* at 1010. Answering the question in the negative, the court held that the language and legislative history of Title IX suggest that the statute "applies only to the practices of the recipients themselves," not to third parties. *Id.* at 1013. Based on this analysis, the *Rowinsky* court concluded that a school could be found liable under Title IX for peer sexual harassment *only* if it "treated sexual harassment of boys more seriously then sexual harassment of girls." *Id.* at 1016.

The reasoning of the Fifth Circuit in *Rowinsky* has been sharply and, in this Court's opinion, persuasively criticized. For example, the Seventh Circuit in *Doe v. University of Illinois,* 138 F.3d 653 (7th Cir.1998), stated as follows:

> With respect, the Fifth Circuit's analysis fundamentally misunderstands the nature of the claim that plaintiffs in this kind of case advance. Jane Doe does not ask that the defendant be held liable for the acts of the harassing students; rather, she asks that it be held liable for its own actions and inaction in the face of its knowledge that the harassment was occurring.... Doe alleges that responsible school and University officials knew of the harassment and failed to take measures to address it. Thus, [the alleged] institutional liability rest[s] on the institution's actions rather than those of the harassers.

*Id.* at 662 (internal quotation marks and citations omitted); *see also Oona, R.S.,* 143 F.3d at 477, 1998 WL 196271 (reaching same conclusion); *Brzonkala,* 132 F.3d at 958 (same). Having rejected *Rowinsky*'s underlying premise, the Seventh Circuit also rejected the conclusion that a school may only be liable for peer sexual harassment if it responds to claims of harassment differently based on sex:

> [T]he *Rowinsky* court's demand that a plaintiff such as Jane Doe, in order to state a Title IX cause of action, allege and show that the school reacted differently to sexual harassment claims made by girls and boys misunderstands sexual harassment itself.... [O]ccasional exceptions do not alter the rule that sexual harassment is an evil that affects mostly women and girls. For this reason, it must be exceedingly

rare that a school receives any complaints of sexual harassment from its male students. The Fifth Circuit's rule would leave schools completely free to ignore the more frequent complaints of sexual harassment from girls, while imposing only the minimal cost that such schools would be required likewise to ignore any complaints they might receive from their male students.

*Doe,* 138 F.3d at 662. The Court agrees with the Seventh Circuit that the analysis of *Rowinsky* fundamentally is flawed and, accordingly, declines to follow the Fifth Circuit's position on the matter.

Nearly a year and a half after *Rowinsky* was decided, the Eleventh Circuit, sitting en banc, ruled, like the Fifth Circuit, that schools could not be liable under Title IX for student-on-student sexual harassment. *See Davis v. Monroe County Bd. of Educ.,* 120 F.3d 1390 (11th Cir.1997) (en banc), *petition for cert. granted,* —— U.S. ——, 119 S.Ct. 29, 141 L.Ed.2d 789 (U.S.1998). The reasons articulated by the Eleventh Circuit in *Davis,* however, bear little resemblance to those offered in *Rowinsky.*

Judge Tjoflat, writing for the six-member majority in *Davis,* began his analysis by concluding that Title IX was enacted pursuant to Congress's powers under the Spending Clause of Article I. *Davis,* 120 F.3d at 1397. Judge Tjoflat then observed that "[w]hen Congress enacts legislation pursuant to the Spending Clause, it in effect offers to form a contract with potential recipients of federal funding." *Id.* at 1399. He explained further that "[t]o ensure the voluntariness of participation in federal programs, the Supreme Court has required Congress to give potential recipients unambiguous notice of the conditions they are assuming when they accept federal funding. A spending provision must read like a prospectus and give funding recipients a clear signal of what they are buying." *Id.* (citing *Pennhurst v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981)). Based on this understanding, Judge Tjoflat looked to see whether Congress had provided the school board unambiguous notice that it could be held liable for failing to stop the alleged student-on-student sexual

harassment. Failing to find the requisite notice in the language or legislative history of Title IX, Judge Tjoflat concluded that educational programs and activities receiving federal funds could not be held liable for failing to remedy peer sexual harassment.

Writing for the four-person dissent, Judge Barkett rejected the reasoning of Judge Tjoflat's majority opinion, concluding that Title IX provides unambiguous notice to recipients of federal funds that they may be liable for failing to remedy the sexual harassment of one student by other students. Judge Barkett initially observed that Title IX does not speak in terms of who must initiate the discriminatory conduct. Rather, "[t]he absolute prohibition contained in the text [of Title IX] is framed solely in terms of who is *protected.*" *Davis*, 120 F.3d at 1412 (Barkett, J., dissenting) (emphasis added). The ramifications of this characteristic of Title IX is of enormous importance. As Judge Barkett explains:

> The identity of the perpetrator is simply irrelevant under the language: "No person ... shall ... be excluded from participation ..., be denied the benefits of, or be subjected to discrimination ...." Thus, under the statute's plain language, liability hinges upon whether the grant recipient maintained an educational environment that excluded any person from participating, denied them benefits, or subjected them to discrimination.

*Id.* (quoting 20 U.S.C. § 1681(a)). Judge Barkett also noted that under the Supreme Court's decision in *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), "the notice requirement for damages actions under the Spending Clause in Title IX cases is satisfied where the alleged violation was intentional." *Davis*, 120 F.3d at 1414 (Barkett, J., dissenting). Judge Barkett explained that because the school board had knowingly permitted a student to be subjected to a hostile educational environment, "sufficient notice was provided to satisfy the Spending Clause prerequisite for a damages action under Title IX." *Id.* (Barkett, J., dissenting).

The three circuit court decisions following *Rowinsky* and *Davis* concluded, for reasons similar to those provided by Judge Barkett's dissent, that Title IX authorizes a cause of action for student-on-student sexual harassment. For example, in *Oona, R.S. v. McCaffrey*, 143 F.3d 473, 1998 WL 196271 (9th Cir.1998), the Ninth Circuit noted:

> *Rowinsky* and *Davis* imply that school officials differ from employees and should not be vicariously liable for the actions of peers under agency principles. But neither employers under Title VII, nor the school officials under Title IX, are vicariously liable for the actions of others. Rather, they are liable for their own discriminatory actions in failing to remedy a known hostile environment.

*Id.* at 477. Similarly, the Fourth Circuit in *Brzonkala v. Virginia Polytechnic Institute*, 132 F.3d 949, 958 (4th Cir.1997), *reh'g en banc granted, opinion vacated*, (Feb. 5, 1998), explained: "A defendant educational institution, like a defendant employer, is, of course, liable for its own discriminatory actions: even the *Rowinsky* majority acknowledges this. Responsibility for discriminatory acts includes liability for failure to remedy a known sexually hostile environment." *Id.* at 958 (citation omitted). Most recently, the Seventh Circuit in *Doe v. University of Illinois*, 138 F.3d 653 (7th Cir.1998) held:

> The Supreme Court has declared that Title IX is to be given "a sweep as broad as its language." *North Haven Bd. of Educ. v. Bell*, [456 U.S. 512, 521, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982)]. That language, in turn, speaks in terms of safeguarding individual students' rights: "No person ... shall be excluded ..., be denied ... benefits ..., or be subjected to discrimination ...." 20 U.S.C. § 1681. As the dissenting judges in *Davis* point out, "[t]he absolute prohibition contained in the text is framed solely in terms of who is protected." *Davis*, 120 F.3d at 1412 (Barkett, J., dissenting). Giving this statutory language the "broad sweep" required by *North Haven* certainly supports the proposition that a school may be liable for refusing to act upon its responsibility to operate a program in which all persons are free from the kind of exclusion and discrimination the statute forbids.

*Id.* at 665.

The Court finds the reasoning of these decisions persuasive and accordingly

concludes that Title IX authorizes a cause of action for student-on-student sexual harassment. As so eloquently stated by Judge Barkett: "Just as a working woman should not be required to 'run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living,' a female student should not be required to run a gauntlet of sexual abuse in return for the privilege of being allowed to obtain an education." *Davis,* 120 F.3d at 1417 (Barkett, J., dissenting) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

Having concluded that a school can be found liable for failing to respond appropriately to student-on-student sexual harassment, the Court must now decide the limits of such liability. Specifically, the Court must determine (1) what constitutes sufficient notice to the school that peer sexual harassment is taking place, and (2) what action is the school required to take to put an end to such conduct.

The Supreme Court recently addressed both of these questions in the context of a Title IX claim involving teacher-on-student sexual harassment. *See Gebser v. Lago Vista Independent School Dist.,* 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). As to the first issue, proper notice, the Supreme Court concluded that "it would 'frustrate the purposes' of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of respondeat superior or constructive notice, i.e., without actual notice to a school district official." *Gebser,* 118 S.Ct. at 1997. Accordingly, the Court found that typically, "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Id.* at 1999. With respect to the second issue, required corrective action, the Supreme Court held that liability will only lie if the response of the recipient amounts to "deliberate indifference." *Id.* Thus, according to the Supreme Court, "damages may not be recovered ... unless an official of the school district who at a minimum has authority to

institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Id.* at 1993.

■ While *Gebser* was decided in the context of teacher-on-student sexual harassment, this Court sees no reason to adopt a different standard for cases in which the alleged harassment is student-on-student. *See Doe,* 138 F.3d at 668. Thus, guided by the Supreme Court's decision in *Gebser* and analogous Title VII case law, this Court finds that to establish a prima facie case of hostile environment harassment under Title IX, a plaintiff must show: (1) that he or she is a member of a protected class; (2) that he or she was subjected to unwelcome sexual harassment; (3) that the harassment complained of was based upon sex; (4) that the charged sexual harassment unreasonably interfered with the conditions of his or her education and created a hostile or abusive education environment; and (5) that an official for the recipient with authority to institute corrective measures on the recipient's behalf had actual notice of plaintiff's claims of sexual harassment, and failed to take prompt and appropriate corrective action. *See Brzonkala,* 132 F.3d at 958–59; *Kinman v. Omaha Pub. Sch. Dist.,* 94 F.3d 463, 467–68 (8th Cir.1996); *Seamons v. Snow,* 84 F.3d 1226, 1232 (10th Cir.1996); *Brown v. Hot, Sexy and Safer Productions, Inc.,* 68 F.3d 525, 540 (1st Cir.1995); *see also Doe v. Claiborne County, Tennessee,* 103 F.3d 495, 515 (6th Cir.1996) (holding that "the elements to state a supervisory hostile environment claim under Title VII equally apply under Title IX"); *Oona, R.S.,* 143 F.3d at 476 1998 WL 196271 (applying Title VII standards to Title IX hostile environment claim); *Murray v. New York Univ. College of Dentistry,* 57 F.3d 243, 248 (2d Cir.1995) (using Title VII legal standards to review claim of discrimination under Title IX).

■ Evaluating the Complaint against this standard, the Court believes that Plaintiffs sufficiently have alleged a cause of action for peer sexual harassment under Title IX. First, it is undisputed that Jessica, as a female, is a member of a protected class. Second, according to the Complaint, Jessica

was subjected to multiple and various forms of unwelcome sexual harassment. Third, Plaintiffs contend that the alleged sexual harassment was initiated on the basis of sex. Fourth, according to Plaintiffs, the charged sexual harassment unreasonably interfered with the conditions of Jessica's education and created a hostile or abusive educational environment. Fifth, Plaintiffs assert that Defendants knew of the charged sexual harassment and intentionally failed to implement prompt and appropriate corrective action. Given these allegations, the Court finds that Plaintiffs have established a basis for their Title IX claim of peer sexual harassment that would entitle them to relief. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683 (quoting *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99). Accordingly, Defendants' Motion to Dismiss Entire Case on grounds that Title IX does not authorize a claim for student-on-student sexual harassment is DENIED.

### D.

■ Finally, Defendants seek dismissal of Plaintiffs Karon and Stephen Haines because they were not students at Charlotte Park Elementary School and were not personally excluded from, denied the benefits of, or subjected to discrimination under an educational program or activity within the meaning of Title IX. *See* 20 U.S.C. § 1681(a). Defendants correctly state that, typically, a parent may not bring a claim under Title IX. *See Rowinsky,* 80 F.3d at 1009 n. 4; *Burrow v. Postville Community Sch. Dist.,* 929 F.Supp. 1193, 1199 (N.D.Iowa 1996); *Bosley v. Kearney R–1 Sch. Dist.,* 904 F.Supp. 1006, 1020 (W.D.Mo.1995) (same), *aff'd on other grounds,* 140 F.3d 776 (8th Cir.1998); *Seamons v. Snow,* 864 F.Supp. 1111, 1116 (D.Utah 1994) (same), *aff'd in part and rev'd in part on other grounds,* 84 F.3d 1226 (10th Cir. 1996); *R.L.R. v. Prague Pub. Sch. Dist. I–103,* 838 F.Supp. 1526, 1530 (W.D.Okla.1993) (same). However, it is well-established that a parent, as next of friend, has standing to assert a claim under Title IX. *See Rowinsky,* 80 F.3d at 1009 n. 4 (holding that a mother, as next of friend, could assert the claims of her daughters under Title IX).

■ In the present case, Plaintiffs assert that Stephen Haines is suing as next of friend of his daughter, Jessica. As such, the Motion to Dismiss with respect to Stephen Haines in his capacity as next of friend to Jessica is DENIED. However, Karon and Stephen Haines also seek relief in their individual capacities for the medical expenses and loss of services of Jessica. These claims are based on alleged violations of Title IX. As noted above, the parents of a child suing under Title IX cannot bring an action to recoup such expenses unless suing on behalf of their daughter or son. Accordingly, with the exception of those claims asserted by Stephen Haines as next of friend of Jessica, Defendants' Motion to Dismiss Karon and Stephen Haines from this action is GRANTED.

### V.

Based on the foregoing reasons, the Court hereby GRANTS Plaintiffs' Second Motion to Amend. Plaintiffs shall file an Amended Complaint incorporating the changes authorized by the Court within thirty days from the date of entry of the accompanying Order. In addition, the Court hereby GRANTS Defendant Metropolitan Board of Public Education's Motion to Dismiss. Accordingly, the Metropolitan Board of Public Education is hereby DISMISSED from this action. Finally, the Court hereby DENIES IN PART and GRANTS IN PART Defendants' Motion to Dismiss Entire Case. In particular, Defendants' Motion is DENIED with respect to those claims asserted by Plaintiff Jessica Haines. Similarly, Defendants' Motion is DENIED with respect to those claims asserted by Plaintiff Stephen Haines as next of friend of Jessica. The Court GRANTS Defendants' Motion, however, with respect to the claims asserted by Plaintiffs Stephen Haines and Karon Haines in their individual capacities.